## O'Connor v. The Daily Publishing Company.

*Frank M. Reber* and *Stevens & Kitner*, for plaintiff.
*Knight, Taggart, Klein & Reich*, for defendant.

LLOYD, J., June 30, 1930.—On March 13, 1930, Edmond O'Connor caused a summons in trespass to issue against the defendant. On the same day he filed a statement alleging that the defendant, The Daily Publishing Company, is a corporation organized and doing business under the laws of the State of Pennsylvania, with its place of business in the Sunbury Daily Building, corner of Market and Second Streets, in the City of Sunbury, Northumberland County, Pennsylvania; "that they publish the 'Sunbury Daily,' daily except Sundays; that William F. Eichholtz is the editor, Lewis Dewart, business manager, and Samuel C. Price, city editor, and also that the defendant did on April 12, 1928, publish a false, scandalous, malicious and defamatory libel concerning him." The sheriff on March 15, 1930, made his return of service and on April 14th the firm of Knight, Taggart, Klein & Reich, by appearance *de bene esse*, appeared for Delia A. Arthur and presented her petition to preliminarily

determine the question of jurisdiction over the defendant, alleging the non-existence of any such corporation as styled and described in the plaintiff's statement of claim as The Daily Publishing Company. Upon the said petition a rule was granted on the plaintiff to show cause why the summons should not be quashed and the service thereof, together with the service of plaintiff's statement, should not be set aside. On April 24th following, the plaintiff filed an answer to said rule, wherein he admits that The Daily Publishing Company, against whom the suit was instituted, is not and never was a corporation, but he challenges the power of the court to set the summons aside and asks for leave to amend the second paragraph of the statement of claim so that the same shall read:

"The defendant, 'The Daily Publishing Company,' was duly registered in the office of the Prothonotary of Northumberland County, originally under the name of W. M. Eichholtz and Lewis Dewart, operating under the name and style of 'The Daily Publishing Company;' that on the 16th day of November, 1928, W. M. Eichholtz filed an affidavit withdrawing from said company and that the remaining owner of said company is now Lewis Dewart, as shown by the records in the Prothonotary's Office of Northumberland County. That at the time of the publication of the matter of which the plaintiff complains, W. M. Eichholtz was the editor, Lewis Dewart, business manager, and Samuel C. Price, city editor. That Lewis Dewart is now the owner, trading and doing business under the style and title of 'The Daily Publishing Company,' and that Delia A. Arthur is the advertising manager."

To this answer Knight, Taggart, Klein & Reich filed a paper denominated an "Answer to Plaintiff's Petition to Amend," challenging the right of plaintiff to the amendment on the grounds that the statute of limitations has intervened and "that the proposed amendment attempts to bring in a new party on the record who was not served with process in this case, was not named as defendant and did not appear in any manner in the case." By a paper signed by counsel for the respective parties it was agreed, *inter alia:*

"That Delia A. Arthur at the time that the summons and copy of plaintiff's statement were served on her by the sheriff was the person for the time being in charge of the place of business of Lewis Dewart, trading and doing business under the fictitious name of The Daily Publishing Company.

"That Delia A. Arthur is not now, and was not at the time suit was instituted, an employee in any capacity, or the person for the time being in charge of the business of a corporation incorporated either under the laws of Pennsylvania or any other state under the name of 'The Daily Publishing Company,' or under the name of 'The Daily Publishing Company of Sunbury, Pa.'

"That at the time suit was instituted, and at the present time, The Daily Publishing Company was and is a registered fictitious or assumed name, under which an individual, to wit, Lewis Dewart, was and is doing business and publishing the said newspaper; all of which was and is of record in the office of the Prothonotary of the Court of Common Pleas of Northumberland County at the time of instituting the said suit and at the present time."

The present proceeding is now before us upon the foregoing record, by which we are called upon to specifically determine: (1) The power of the court to set aside the service of the writ of summons and the statement of claim; (2) the power of the court to quash the writ; and (3) the right of the plaintiff to amend his statement in the particulars hereinbefore stated.

As to the service of the writ, the sheriff's return is as follows:

"Served The Daily Publishing Company, within named defendant, by handing unto Delia A. Arthur, Advertising Manager, the person for the time being

in charge thereof, at the place of business of the said defendant company, in the City of Sunbury, County of Northumberland and State of Pennsylvania, a true and attested copy of the within writ, together with a copy of the plaintiff's statement and making known unto her the contents thereof."

Section one of the Act of July 9, 1901, P. L. 614, provides:

"The writ of summons . . . may be served by the sheriff of the county wherein it is issued upon an individual . . . in any one of the following methods . . . (e) By handing a true and attested copy thereof, at his place of business, to his agent, partner, or the person for the time being in charge thereof, if upon inquiry thereat his residence in the county is not ascertained, or if for any cause an attempt to serve at his residence has failed."

Section two of the said act, as amended by the Act of April 3, 1903, P. L. 139, regulating service upon corporations, partnerships limited, etc., provides:

"The writ of summons . . . may be served by the sheriff upon a corporation, a partnership limited, or a joint stock company, in the county wherein it is issued, in any of the following methods: . . . (e) By handing a true and attested copy thereof at any of its offices, depots or places of business, to its agent or person for the time being in charge thereof, if upon inquiry thereat the residence of one of the said officers within the county is not ascertained, or if from any cause an attempt to serve at the residence given has failed."

The return shows a substituted service in compliance with the act, but it is deficient, in that it does not show that the preliminary inquiry required thereby was made. Under the foregoing statutory provision, a substituted service can only become effective when upon inquiry the residence in the county of the party to be served cannot be ascertained or "if for any cause an attempt to serve at his residence has failed." And the fact that such inquiry was made or that the attempt to serve at the residence has failed must affirmatively appear in the return. The following cases are illustrative. In the case of Shamokin Lumber and Construction Co. v. Line Mountain Coal Co., 85 Pa. Superior Ct. 222, to which the present case is analogous, it was said:

"The return is defective on its face; while the words used in the return, 'person in charge of the principal place of business . . .' would indicate that he intended to make a return under clause (e), a comparison of the return with the requirements of clause (e) shows that the conditions are lacking in which service under that clause may be made. Such a return must specify that by inquiry in the county at the place of business of the corporation where service is sought to be made, the sheriff has not been able to ascertain the residence of any of its officers within the county, or, ascertaining the residence, that for some cause an attempt to serve at the residence has failed. The record questioned does not show that the sheriff made any inquiry, or that, having made the inquiry and learned the residence of such officer, he was then unable to make service at the residence. Recent consideration of the subject, illustrated by returns respectively good and bad, will be found in Park Bros. & Co. v. Boiler Works, 204 Pa. 453, 458; O'Brien v. Bartlett, etc., 12 Dist. R. 746, 747, and Miller Paper Co. v. Keystone C. & C. Co., 267 Pa. 180."

In American Hotel Supply Co. v. Bryant, 19 Dist. R. 702, the court, in setting aside the service of the writ of summons and statement of claim, said:

"The Act of July 9, 1901, P. L. 614, provides that a service upon an agent at the defendant's place of business is valid only 'if, upon inquiry thereat, his residence in the county is not ascertained, or if for any cause an attempt to serve at his residence has failed.' There is nothing in the return of the con-

stable in this case to show that any inquiry was made with regard to the residence of the defendant, or that a service of the writ upon the defendant at his residence was not possible. It is necessary that the return should disclose these facts before service upon an agent at a place of business can confer jurisdiction of the defendant: O'Brien v. Bartlett, Hayward & Co., 12 Dist. R. 746."

It is, therefore, manifest that whether by the present service it was intended to serve the writ and statement of claim upon the defendant, either as an individual, a corporation or a partnership, the return is defective and the service thereof, together with the service of the statement of claim, must be set aside.

As to the quashing of the writ, we have not been cited to, nor by diligent search have we been able to find, any authority which rules the present question. The writ, when considered alone or in connection with the statement of claim, discloses neither defect nor irregularity. But when considered in connection with the statement of facts agreed upon, it then appears that the writ was issued against a nonexistent defendant. The question now is whether, for the purpose of quashing the writ, we may read and consider the writ and agreed facts together. Upon the principle, somewhat analogous to the one now under consideration, established in the case of Sipe v. Penna. R. R. Co., 219 Pa. 210, 213, 214, we are of the opinion that they cannot be so read. It was there said:

"Under the authority of our cases, a variance between the writ or declaration in this respect is not a good ground of demurrer; nor can there be, under our practice, oyer of the writ. In Dillman v. Schultz, 5 S. & R. 35, Justice Duncan said: 'I do not know whether in any stage of an action, advantage could be taken of a variance between the writ and declaration, where the cause of action appeared to be the same. The cases are collected by Sergeant Williams, in his edition of Saunders in the note to Redman v. Edolph, 1 Saund. 318a, who says, it seems to follow from all the decisions, that no advantage can be taken of a defective original, or of a variance between the writ and the declaration. However this may be, it cannot be taken advantage of where the defendant pleads in bar to the declaration.'

"In Overseers of Roxborough v. Bunn, 12 S. & R. 292, this court, speaking again by Justice Duncan, said (p. 295): 'In England, a judgment is never reversed in any court of record, for any variance in any writ, original or judicial, from the declaration or other proceedings: Helliot v. Selby, 2 Salk. 701. There the court held, that a defendant cannot take advantage of a variance between a writ and count, without craving oyer of the writ. In Ford v. Burnham, Barnes, 340, the court, as praying oyer of the original had been much used to delay, came to a resolution not to grant oyer of the original in future; and, so far have the courts discouraged this dilatory course, that with respect to a writ of error for a defective original, as it would be a hard case to set aside a judgment for a mere slip, the master of the rolls would defeat the writ of error by ordering the original to be amended, or, if necessary, granting a new one: Hole v. Finch, 2 Wils. 393; Redman v. Edolph, 1 Saund. 318a, note. This, however, is not the rule where the variance is in the nature of the action.'

"In 1 Chitty's Pleading, 9th Am. ed., sec. 244, it is stated that: 'Regularly the declaration should correspond with the process, but as according to the present practice of the courts, oyer of the writ cannot be craved, a variance between the writ and the declaration cannot in any case be pleaded in abatement or otherwise.'

"And again, the same author, in the 16th Am. ed., sec. 269, states that: 'It is an indispensable requisite of every declaration that it substantially adhere to the form of action stated in the process, and if it deviate, the defendant may apply to the court or a judge to set aside the declaration for irregularity; so that the plaintiff must abandon his first process and issue a fresh writ stating a form of action adapted to that in his declaration. But the objection is not a ground of demurrer to the declaration, but merely of a summary application to set aside the declaration for irregularity. . . . If the body of the declaration state a cause of action that is not, nor could be, properly declared for in the form of action stated in the writ, then the deviation would constitute an irregularity and ground for setting aside the declaration, but not a ground of demurrer.' "

We, therefore, hold that we are without power to quash the writ.

Our action in setting aside the service of the summons and statement of claim precludes the necessity for determining the right of the plaintiff to amend his statement of claim for the reason that we acquired no jurisdiction over the defendant and neither is the statement of claim before us.

For the foregoing reasons we now enter the following decree:

And now, June 30, 1930, that part of defendant's rule which relates to the setting aside of the service of the writ of summons and statement of claim is hereby made absolute and the said service set aside; that part of the rule relating to the quashing of the writ is discharged; the plaintiff's motion for leave to amend his statement of claim is discharged and leave to amend is denied.

An exception is noted and bill sealed for both the plaintiff and defendant.

From C. M. Clement, Sunbury, Pa.